**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ROBERT TURINSKI, | |
| Plaintiff, | CIVIL ACTION NO. 3:04-CV-1919 |
| v. | (JUDGE CAPUTO) |
| WILKES-BARRE FIRE FIGHTERS ASSOCIATION LOCAL 104, et al., | |
| Defendants. | |

**MEMORANDUM**

Presently before the Court are cross-motions for summary judgment filed by Plaintiff Robert Turinski ("Plaintiff") and Defendants City of Wilkes-Barre (the "City"), Thomas M. Leighton ("Mayor Leighton"), Jacob Lisman ("Chief Lisman") (collectively "City Defendants"), and Wilkes-Barre Fire Fighters Local 104, International Association of Fire Fighters, AFL-CIO ("Local 104") (collectively "Defendants"). (Docs. 72, 75, 80 and 85.) For the reasons stated below, Plaintiff's motions will be denied.  Defendants' motions will be granted as to Count I of Plaintiff's Second Amended Complaint.  The Court has jurisdiction over Count I of Plaintiff's Second Amended Complaint pursuant to 28 U.S.C. § 1331.  The Court will decline to exercise its supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over Counts II and III of Plaintiff's Second Amended Complaint, and will dismiss these claims without prejudice.

**BACKGROUND**

**I. Factual Background**

While the Court is presented with cross-motions for summary judgment, because the Court will grant summary judgment in Defendants' favor, the Court will accept Plaintiff's version of the facts and view them in the light most favorable to him.

Plaintiff was hired as a firefighter by the City in 1975. (Turinski Dep. 10:21, Aug. 17, 2006, Doc. 79-2.) Ninety (90) days after his hiring, Plaintiff became a member of Local 104, the union that represents the City firefighters. (Turinski Dep. 13:12-22.) Plaintiff was employed at the rank of private from 1975 until 2000. (Turinski Dep. 11:24-25; 17:15-22.) In 2000, Plaintiff was appointed an Assistant Fire Chief by Mayor Thomas McGroarty. (Turinski Dep. 42:1-2.)

In 2003, the office of Mayor of the City was up for election. (Turinski Dep. 45:22-24.) The incumbent Mayor McGroarty faced off against Thomas M. Leighton, now the Mayor of the City. (*See* Turinski Dep. 46:9-11.) At first, during the primary election season, which occurred in the Spring of 2003, Plaintiff placed his allegiance with the incumbent McGroarty, with whom Plaintiff was "good friends." (Turinski Dep. 49:6-8; 54:20.) Plaintiff contributed financial support and attended McGroarty's campaign social functions. (Turinski Dep. 49:20-50:12.) Plaintiff also supported McGroarty more vocally, asking people to vote for McGroarty and attending rallies. (Turinski Dep. 54:17-55:7.)

However, Plaintiff began to hear rumors that, if Leighton were elected Mayor, there would be a "shake-up in the fire department." (Turinski Dep. 47:12-14.) In particular, Plaintiff heard that Leighton would appoint Jacob Lisman as Fire Chief, and that there

2

would be changes made among the ranks of the Assistant Chiefs. (Turinski Dep. 58:7.) Plaintiff began to fear for his job. (Turinski Dep. 50:17.) Consequently, Plaintiff decided to switch his support from McGroarty to Leighton. (Turinski Dep. 50:13-17.) Plaintiff contributed money, attended campaign functions conducted on Leighton's behalf, and placed signs in his yard. (Turinski Dep. 51:8-15; 75:21.) Leighton beat McGroarty in the primary and then won the general election. (*See* Turinski Dep. 72:20-23; Local 104's Statement of Material Facts ¶ 10, Doc. 82.)

Thereafter, on November 26, 2003, Plaintiff and other Assistant Fire Chiefs received a letter from then Mayor-Elect Leighton. (Turinski Dep. 72:16-25.) In the letter, Leighton informed Plaintiff and the other Assistant Fire Chiefs that their positions were subject to appointment by the Mayor. (Letter from Thomas M. Leighton, Mayor, City of Wilkes-Barre, to Robert S. Turinski, dated November 26, 2003, Doc. 95-4, "Leighton Letter".) As such, Leighton stated that he was opening their positions to other candidates. (*Id.*) Leighton did, however, invite Plaintiff and the other Assistant Fire Chiefs to apply for their positions. (*Id.*)

Plaintiff accepted Leighton's invitation to apply for an Assistant Fire Chief position. (Turinski Dep. 73:5.) Plaintiff submitted a resume and was interviewed by the Mayor's transition team. (Turinski Dep. 77:3-8.) One of the persons who interviewed Plaintiff was Jacob Lisman, who, as rumored, was appointed Fire Chief by Mayor Leighton. (Turinski Dep. 84:25-85:3.) During the interview process, Plaintiff continued to act as and was paid as an Assistant Fire Chief. (Turinski Dep. 85:6-85:11.)

Then, on the afternoon of February 10, 2004, Chief Lisman called Plaintiff into his office and informed him that Mayor Leighton would not be selecting him to serve as an

Case 3:04-cv-01919-ARC   Document 112   Filed 12/18/06   Page 4 of 16

Assistant Fire Chief in his administration. (Turinski Dep. 86:12-16.)  Plaintiff asked Lisman why he would not be selected, and Lisman responded that he had nothing to do with the decision. (Turinski Dep. 93:19-20.)  Chief Lisman told Plaintiff that he had two choices – "retire or get demoted to private." (Turinski Dep. 85:16-17.)  Chief Lisman even offered to type up a letter of resignation for Plaintiff to sign, which Plaintiff refused to do, telling Lisman that he did not want to retire. (Turinski Dep. 89:9-13.)

Afterwards, on February 11, 2004, or February 12, 2004, Plaintiff called two councilmembers for the City, Phil Latinski and Shirley Vitanovec, in an effort to save his job as an Assistant Fire Chief. (Turinski Dep. 92:10; 96:14.)  Both Latinski and Vitanovec informed Plaintiff that Mayor Leighton had told them that "it was the transition team" that did not select Plaintiff. (Turinski Dep. 94:11-12; 96:25-97:1.)

Plaintiff then spoke with Tim Evans, a member of the Mayor's transition team, who told Plaintiff that he "thought [Plaintiff] did good and that [he] [was] going to be selected for assistant chief." (Turinski Dep. 96:4-6.)  As such, Plaintiff believes that his being forced to retire was the doing of Mayor Leighton.

On February 13, 2004, Plaintiff went to his Local 104 union representative, Thomas Makar, who also was president of the union (Turinski Dep. 110:4), and filed three grievances (Turinski Dep. 90:4-15).  Plaintiff's first grievance was based upon his being demoted from Assistant Fire Chief to private. (Turinski Dep. 90:10-11.)  Second, Plaintiff grieved that he was not provided with any documentation verifying his demotion. (Turinski Dep. 90:11-13.)  Third, Plaintiff complained that his back pay had not been included in determining his pension. (Turinski Dep. 90:13-15.)  This third grievance, Plaintiff concedes, had nothing to do with his allegedly being forced to retire or accept a

demotion from the position of Assistant Fire Chief. (Turinski Dep. 143:2-3.) Makar told Plaintiff that, if Plaintiff did not retire and was demoted to private, he would lose a lot of money from his pension, which is calculated based upon a firefighter's final salary. (Turinski Dep. 90:16-21; 122:11-123:8; 129:25-130:2.)

Afterwards, Plaintiff again spoke with Chief Lisman, who asked Plaintiff whether he had made a decision yet. (Turinski Dep. 97:12-13.) Plaintiff responded that he did not have an answer yet. (Turinski Dep. 97:14-15.) Lisman then told Plaintiff that he would have a job "down at South Station on Engine 5 either as a driver or a hoseman." (Turinski Dep. 97:18-20.) However, Plaintiff testified that Lisman specifically informed him that Plaintiff was not demoted yet. (Turinski Dep. 97:22-25.)

On February 19, 2004, Chief Lisman responded to Plaintiff's grievances pertaining to his impending demotion, rejecting them because, as of that date, Plaintiff was still an Assistant Fire Chief. (Turinski Dep. 98:1-10; 116:11-17; *see* Letter from Jacob Lisman, Fire Chief, City of Wilkes-Barre, to Thomas Makar, President Local 104, dated February 19, 2004, Doc. 87-12, "Lisman Letter".) Plaintiff, however, argues that his grievance was not fully pursued by Local 104 because Thomas Makar, President of Local 104, was interested in becoming an Assistant Fire Chief, and knew that positions would become available due to Plaintiff and others being forced to retire. (Turinski Dep. 144:12-145:21.) Makar, in fact, was appointed Assistant Fire Chief by Mayor Leighton after Plaintiff was forced to retire. (Turinski Dep. 118:19-119:13.)

Plaintiff also tried to contact Mayor Leighton, but, despite his frequent phone calls, Plaintiff could not get through to speak with Leighton and Leighton did not return Plaintiff's calls until after Plaintiff had retired. (Turinski Dep. 123:14-23.)

5

On February 27, 2004, Plaintiff signed and delivered a letter expressing his intent to retire from the Fire Department, effective February 28, 2004. (Turinski Dep. 129:8-10; Letter from Robert S. Turinski, dated February 27, 2004, Doc. 87-13, "Retirement Letter".) Up until Plaintiff's retirement, Plaintiff maintained the rank of and was paid the salary of an Assistant Fire Chief. (Turinski Dep. 130:8-9.) Plaintiff chose to retire, rather than accept a demotion to private, because his pension, which is calculated based upon his salary, would have been reduced had he been demoted to the lower-paying position. (Turinski Dep. 150:14-15.)

Plaintiff's employment as Assistant Fire Chief with the City was governed by the Collective Bargaining Agreement ("CBA") between Local 104 and the City. (Doc. 87-14; Turinski Dep. 143:18-21.) Plaintiff avers that, under the CBA, he can only be fired for "just cause." (Turinski Dep. 158:1; *see* Article 27 of the CBA, Doc. 87-14 at 30.)

**II. Procedural Background**

On August 27, 2004, Plaintiff filed his Complaint. (Doc. 1.) Plaintiff then filed an Amended Complaint on September 2, 2004. (Doc. 2.) Thereafter, on September 22, 2004, Plaintiff filed a motion for leave to file a second amended complaint (Doc. 5), which the Court later granted (Doc. 40.) Plaintiff's Second Amended Complaint was filed on December 16, 2004. (Doc. 42.) Therein, Plaintiff alleged that Defendants deprived him of his constitutional rights[1] under color of state law, in violation of 42 U.S.C. §§ 1983, 1985 and 1986, by forcing him to retire (i.e., a "constructive discharge"). (Doc. 42 ¶¶ 6-23.)

---

[1] Plaintiff's Second Amended Complaint cites the First, Fourth and Fourteenth Amendments. (Doc. 42 ¶ 1.) However, Plaintiff fails to specify how his First or Fourth Amendment rights were violated. Rather, Plaintiff focuses entirely on the lack of cause, or a hearing, for his alleged constructive discharge. Indeed, Plaintiff's Brief in Support of his Motion for Summary Judgment against City Defendants only addresses procedural due process. (Doc. 73 at 18.) As such, the Court construes Plaintiff's Second Amended Complaint as only claiming a violation of procedural due process. Even if Plaintiff did raise these claims in his Second Amended Complaint, because he ignored them at summary judgment, they are deemed waived. *Scott v. Beard*, Civil Action No. 3:02-CV-0691, 2006 WL 2645150, at *4 (M.D. Pa. Sept. 14, 2006).

Plaintiff also asserted a claim against Local 104 for the breach of its duty, as his union, of fair representation. (Doc. 42 ¶¶ 24-25.) Lastly, Plaintiff claimed that the City breached multiple provisions of the CBA. (Doc. 42 ¶¶ 26-31.)

Local 104 and City Defendants each moved to dismiss Plaintiff's Second Amended Complaint. (Docs. 34, 37.) On August 9, 2005, the Court granted Defendants' motion to the extent that Plaintiff's section 1985 and 1986 claims were dismissed for failure to state a claim. (Doc. 50.) City Defendants then filed a second motion to dismiss. (Doc. 51.) On August 16, 2005, the Court granted City Defendants' motion to dismiss insofar as they sought dismissal of Plaintiff's claims against Mayor Leighton and Chief Lisman in their official capacities. (Doc. 57.)

On September 19, 2006, Plaintiff moved for summary judgment against both Local 104 and City Defendants. (Docs. 72, 75.) Thereafter, on September 20, 2006, Local 104 filed a Motion for Summary Judgment. (Doc. 80-1.) On October 2, 2006, City Defendants moved the Court for summary judgment as to Plaintiff's claims. (Doc. 85-1.)

These motions are fully briefed and ripe for disposition.

## LEGAL STANDARD

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. Where, however, there is a disputed

issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *See id.* at 248. An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id*.

Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law. *See* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2727 (2d ed. 1983). The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the Court that "the nonmoving party has failed to make a sufficient showing of an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. *See White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988). Once the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *See Anderson*, 477 U.S. at 256-257.

The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

**DISCUSSION**

**I. Plaintiff's Procedural Due Process Claim**

To establish a claim under section 1983 for deprivation of procedural due process, a plaintiff must prove that he was deprived of a property interest under color of state law and the procedures available to him did not provide him with due process. *Dykes v. Southeastern Pa. Transp. Auth.*, 68 F.3d 1564, 1570 (3d Cir. 1995). Here, Plaintiff bases his procedural due process claim upon his alleged constructive discharge.

Employee resignations and retirements are presumed to be voluntary. *Lehany v. City of Pittsburgh*, 183 F.3d 220, 228 (3d Cir. 1999) (citing *Angarita v. St. Louis County*, 981 F.2d 1537, 1544 (8th Cir. 1992)). "This presumption remains intact until the employee presents evidence to establish that the resignation or retirement was involuntarily procured." *Id.* "If an employee retires of his own free will, even though prompted to do so by some action of his employer, he is deemed to have relinquished his property interest in his continued employment for the government, and cannot contend that he was deprived of his due process rights." *Id.* (citing *Hargray v. City of Hallandale*, 57 F.3d 1560, 1567 (11th Cir. 1995); *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 167, 173 (4th Cir. 1988)).

Under Third Circuit jurisprudence, "a resignation will be deemed involuntary (i.e., deemed a constructive discharge) and will thus trigger the protections of the due process clause, and form the basis of a [section] 1983 due process claim, under only two circumstances: (1) when the employer forces the employee's resignation or retirement by coercion or duress, or (2) when the employer obtains the resignation or retirement by deceiving or misrepresenting a material fact to the employee." *Hill v. Borough of Kutztown*, 455 F.3d 225, 233 n.10 (3d Cir. 2006) (citing *Lehany*, 183 F.3d at 228). To

determine whether a retirement is involuntary, the Court must look at all of the circumstances surrounding Plaintiff's retirement. *O'Connell v. County of Northampton*, 79 F.Supp. 2d 529, 533 (E.D. Pa. 1999). The issue is whether Plaintiff reasonably believed that he "had no other choice but to quit." *Lighton v. Univ. of Utah*, 209 F.3d 1213, 1222 (10th Cir. 2000); *see also Pa. State Police v. Suders*, 542 U.S. 129, 134 (2004). "[T]he assessment [of] whether real alternatives were offered is gauged by an objective standard rather than by the employee's purely subjective evaluation; that the employee may perceive his only option to be resignation . . . is irrelevant." *Stone,* 855 F.2d at 174; *see Christie v. United States*, 518 F.2d 584, 587-88 (Ct. Cl. 1975). "[T]he mere fact that the choice is between comparably unpleasant alternatives . . . does not of itself establish that a resignation was induced by duress or coercion, hence was involuntary." *Stone*, 855 F.2d at 174. This is so because the fact remains that a plaintiff faced with uninviting alternatives still has a choice. *Christie*, 518 F.2d at 587-88.

Here, Plaintiff has made no allegations and has introduced no evidence that City Defendants deceived or misrepresented a material fact to him, inducing him to retire. Rather, Plaintiff claims only that his retirement was the product of coercion or duress.

In determining whether a retirement was involuntary due to coercion or duress, the Court is to consider the following factors: (1) whether the employee was presented with an alternative to retirement; (2) whether the employee understood the nature of the choice he was given; (3) whether the employee had a reasonable time to choose; (4) whether the employee was permitted to select the effective date of retirement; and (5) whether the employee had the advice of counsel. *Hargray*, 57 F.3d at 1568; *Speziale v.*

*Bethlehem Area Sch. Dist.*, 266 F. Supp. 2d 366, 372 (E.D. Pa. 2003); *O'Connell*, 79 F. Supp. 2d at 533.  After analyzing these factors, the Court concludes that Plaintiff has failed to raise a genuine issue of material fact as to whether his retirement was the product of coercion or duress, and thus involuntarily procured.  As such, the Court will grant summary judgment in Defendants' favor.

First, while Plaintiff argues that Defendants forced his hand, Plaintiff was presented with an alternative to retirement, albeit an unpleasant one – Plaintiff could have accepted a demotion from Assistant Fire Chief to private.  Consequently, Plaintiff's retirement was voluntary. *Ballentine v. Dep't of Justice*, 884 F.2d 1399 (Fed. Cir. 1989) (Table) (per curiam), *available at* 1989 WL 90751 (retirement was voluntary where employee was presented with choice of either retiring or accepting a demotion) (citing *Christie*, 518 F.2d at 587); *Filliben v. Dep't of Navy*, 34 M.S.P.R. 31, 34 (1987) (choice between demotion and resignation does not render a resignation involuntary).[2]

Second, Plaintiff understood the nature of the choice put to him.  The record demonstrates that Plaintiff was keenly aware of his options, as well as their potential ramifications.  Plaintiff knew that, if he chose to retire, he would do so at a higher pension because his pension would be based upon his Assistant Fire Chief's salary.  Plaintiff also knew that, if he were ultimately demoted to the lower-paying position of private, his

---

[2] It appears that Plaintiff even possessed a third option – Plaintiff could have stood pat.  Mayor Leighton did not appoint Plaintiff's replacement until July 22, 2004, nearly five months after Plaintiff's retirement. (Makar Dep. 65:7-10; City of Wilkes-Barre Office of the Mayor, Executive Order No. 47 of 2004, dated July 22, 2004, Doc. 80-15.)  As such, Plaintiff may have been able to remain as Assistant Fire Chief until that time.  Plaintiff could have at least remained as an Assistant Fire Chief past the date of his retirement.  Plaintiff could have waited for his demotion to private, a demotion he alleges was sure to come, and then prosecute a grievance with Local 104 under the CBA.  However, Plaintiff decided against this option, instead choosing to preempt his allegedly impending demotion by retiring.

pension would be based upon this reduced level of pay. Plaintiff chose to retire in order to protect his higher pension. Consequently, the Court concludes that Plaintiff understood the nature of the choice put to him as well as the ramifications of his decision to retire.

Third, Plaintiff had a reasonable period of time in which to decide whether to retire. The Leighton Letter was dated November 26, 2003. Plaintiff's Retirement Letter was dated February 27, 2004. In addition, Plaintiff had heard rumors about Mayor Leighton's intent to shake up the Fire Department during the Spring of 2003. As such, Plaintiff had more than three months to consider his decision. While Plaintiff stated in his deposition that Chief Lisman pressured him to retire during their February 10, 2004 conversation, with Lisman even offering to type up a letter of retirement for Plaintiff to sign, Plaintiff did not succumb to Lisman's pressure. Afterwards, Plaintiff even filed grievances with Local 104 and waited for their resolution. After receiving an answer from the City on February 19, 2004 that his grievance was without merit because he still occupied the position of Assistant Fire Chief, Plaintiff waited more than a week before submitting his Retirement Letter on February 27, 2004. Viewing all of these surrounding circumstances, the Court concludes that Plaintiff had a reasonable period of time in which to make an informed decision to retire.

Fourth, Plaintiff had control over the effective date of his retirement. There is no evidence in the record suggesting that Plaintiff was given a deadline to make his decision. To be sure, Mayor Leighton did not appoint Plaintiff's replacement until July 22, 2004, nearly five months after Plaintiff's retirement. (Makar Dep. 65:7-10; City of Wilkes-Barre Office of the Mayor, Executive Order No. 47 of 2004, dated July 22, 2004, Doc. 80-15.) As such, it appears that Plaintiff could have remained in his position as Assistant

Fire Chief until that time. At the least, Plaintiff could have remained in his position as Assistant Fire Chief past February 28, 2004, waited for his allegedly impending demotion, and then challenged it through the union grievance procedure. Instead, Plaintiff chose to retire, effective February 28, 2004. As such, the Court concludes that Plaintiff controlled the effective date of his retirement.

Lastly, Plaintiff does not appear to have had the advice of counsel. However, Plaintiff has failed to present any evidence of how the advice of counsel would have altered his decision to retire. As such, this factor does not weigh in Plaintiff's favor. *See Speziale*, 266 F. Supp. 2d at 374.

Having fully addressed the five factor test set forth in *Hargray* and employed in *O'Connell* and *Speziale*, the Court concludes that there is no genuine issue of material fact as to whether Plaintiff's retirement was the product of coercion or duress on the part of Defendants. Even when viewing the evidence in the light most favorable to Plaintiff, the Court finds that Plaintiff was presented with at least two options – accept a demotion to private or retire. "Resignations obtained in cases where an employee is faced with unpleasant alternatives are nevertheless voluntary because 'the fact remains that plaintiff had a choice.'" *Hargray*, 57 F.3d at 1568 (quoting *Christie*, 518 F.2d at 587). Here, Plaintiff has failed to present evidence that his choice between these two unpleasant alternatives was not, in fact, a choice. He has therefore failed to rebut the presumption that his retirement was voluntary. Defendants are thus entitled to summary judgment on

Plaintiff's section 1983 constructive discharge claim.[3]  Plaintiff's motions for summary judgment will be denied.

## II. Plaintiff's State Law Claims

Whereas Plaintiff's now dismissed federal law claims were the bases for subject matter jurisdiction, the Court will decline to exercise supplemental jurisdiction over Plaintiff's state law claims against Local 104 for breach of a union's duty of fair representation and breach of contract. 28 U.S.C. § 1367(c) (a federal district court may decline to exercise supplemental jurisdiction over state law claims when the court has dismissed all claims over which it has original jurisdiction); *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) (stating that "if the federal claims are dismissed before trial . . . the state claims should be dismissed as well").  Accordingly, the Court will dismiss Counts II and III of Plaintiff's Second Amended Complaint without prejudice.

---

[3] Because the Court concludes that Plaintiff voluntarily relinquished any property interest in his public employment, the Court need not address in depth the issue of whether the grievance procedures available to him provided him with due process of law.  The Court notes that the United States Court of Appeals for the Third Circuit has repeatedly held that, "in cases in which 'a due process claim is raised against a public employer, and grievance and arbitration procedures are in place, . . . those procedures satisfy due process requirements.'" *Leheny*, 183 F.3d at 228.  In the present case, Plaintiff's employment was governed by the CBA between Local 104 and the City.  The CBA included a grievance procedure providing for successive appeals to higher levels within the Fire Department, then to the Mayor, and ultimately to an arbitrator. (Article 16 of the CBA, Doc. 87-14 at 17-18.)  Such a process has been held to meet the requisite due process requirements in a public employment context. *Jackson v. Temple Univ.*, 721 F.2d 931, 933 (3d Cir. 1983) (stating that right to proceed to arbitration satisfies due process even if earlier grievance hearings were inherently biased). Plaintiff did, in fact, file a grievance via those procedures, which was subsequently denied by Chief Lisman because Plaintiff had not yet been demoted.  Plaintiff then abandoned his grievance, having not grieved to the Mayor, which was the next step in the CBA grievance procedure.  Also, the CBA grievance procedure remained available to Plaintiff to challenge his demotion if and when he ultimately were demoted.  However, Plaintiff chose to retire rather than stand pat, wait for the demotion he alleges was a foregone conclusion, and fight.  Having not availed himself of the constitutionally adequate process that was available to him under the CBA, Plaintiff could not now complain that he was deprived of due process.

## CONCLUSION

For the above stated reasons, the Court will: (1) grant Defendants' motions for summary judgment as to Count I of Plaintiff's Second Amended Complaint; (2) dismiss Counts II and III of Plaintiff's Second Amended Complaint without prejudice; and (3) deny Plaintiff's motions for summary judgment.

An appropriate Order will follow.


 December 18, 2006                                      /s/ A. Richard Caputo
Date                                                              A. Richard Caputo
                                                                      United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ROBERT TURINSKI, | |
| Plaintiff, | CIVIL ACTION NO. 3:04-CV-1919 |
| v. | (JUDGE CAPUTO) |
| WILKES-BARRE FIRE FIGHTERS ASSOCIATION LOCAL 104, INTERNATIONAL ASSOCIATION OF FIRE FIGHTERS, AFL-CIO a/k/a LOCAL 104 OF THE INTERNATIONAL ASSOCIATION OF FIRE FIGHTERS, AFL-CIO-CLC and CITY OF WILKES-BARRE, | |
| Defendants. | |

## ORDER

**NOW**, this  18th  day of December, 2006, **IT IS HEREBY ORDERED** that:

(1) Defendants City of Wilkes-Barre, Thomas M. Leighton, Jacob Lisman, and Wilkes-Barre Fire Fighters Local 104, International Association of Fire Fighters, AFL-CIO's Motions for Summary Judgment (Docs. 80, 85) as to Count I of Plaintiff's Second Amended Complaint (Doc. 42) are **GRANTED**.

(2) Plaintiff's Motions for Partial Summary Judgment (Docs. 72, 75) are **DENIED**.

(3) Counts II and III of Plaintiff's Second Amended Complaint (Doc. 42) are **DISMISSED** without prejudice.

(4) The Clerk of the Court shall mark this case as **CLOSED**.

 /s/ A. Richard Caputo
A. Richard Caputo
United States District Judge